BRIAN T. FITZSIMONS (*pro hac vice pending*)
Email: fitzsimonsb@sec.gov
Securities and Exchange Commission
100 F Street N.E.
Washington, DC 20549-5020
Telephone: (202) 551-5905

<u>LOCAL COUNSEL</u>:

RUTH C. PINKEL (Cal. Bar No. 164470)
Email: pinkelr@sec.gov
Securities and Exchange Commission
444 S. Flower Street, Suite 900
Los Angeles, CA 90071
Telephone: (323) 965-3322
Facsimile: (213) 443-1904

Attorneys for Plaintiff
Securities and Exchange Commission

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>KEVIN N. RICHARDS,<br><br>　　　　　　　Defendant. | Case No. 8:25-cv-02057<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Securities and Exchange Commission ("Commission" or "SEC"), for its Complaint against Kevin N. Richards ("Richards" or "Defendant") alleges as follows:

**JURISDICTION AND VENUE**

1. The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. §§ 77t(b)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)].

2. This Court has jurisdiction over this action pursuant to Sections 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(d) and 77v(a)], Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa], and Sections 209(d), 209(e), and 214(a) of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e), and 80b-14(a)].

3. Defendant, directly or indirectly, has made use of the means or instruments of transportation or communication in interstate commerce, or of a means or instrumentality of interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged in this Complaint. Among other things, Defendant engaged in interstate emails and telephone calls with clients and Resolute personnel.

4. Venue lies in this District pursuant to Section 22(a) of the Securities Act [15 U.S.C. §77v (a)] and Section 27 of the Exchange Act [15 U.S.C. S78aa (a)] because Defendant transacted business here, including certain of the acts complained of in this Complaint, and because Defendant resided and maintained a principal place of business in Laguna Niguel, California during the Relevant Period.

5. Defendant and the Commission executed tolling agreements that tolled the running of any applicable statute of limitation from September 23, 2024 to June 21, 2025. The Defendant's securities law violations during the Relevant

1  Period are within the five-year statute of limitations for certain relief as set forth in
2  28 U.S.C. § 2462.

## SUMMARY

6. From at least 2020 through 2021 (the "Relevant Period"), Richards, a California-based insurance agent, working through his entities KNR Wealth Management, Inc. ("KNR Wealth Management") and KNR Consulting Group, Inc. ("KNR Consulting"), marketed and sold approximately $12 million of investments in risky, oil and gas securities (the "Oil and Gas Securities") to approximately 25 retail investors. The Oil and Gas Securities were sold in a series of unregistered securities offerings sponsored by Resolute Capital Partners, LLC ("Resolute") and Homebound Resources, LLC ("Homebound"). Resolute paid transaction-based compensation to Richards through an intermediary company, Beacon Global Group, Inc. ("Beacon Global").

7. Richards targeted his existing base of insurance clients to purchase Oil and Gas Securities. Richards also used email solicitations, print advertisements, networking events, seminars, local news interviews, and a talk radio show to promote oil and gas investing. When contacted by prospective investors, Richards often recommended that they invest in the Oil and Gas Securities.

8. Many of the individuals to whom Richards sold the Oil and Gas Securities lost their money. The sponsoring entities failed to make interest payments and return principal to debt investors when notes came due and made only *de minimis* distributions to equity investors.

9. Richards received $618,794 in transaction-based compensation from Resolute for sales of Oil and Gas Securities during the Relevant Period.

10. During the Relevant Period, Richards acted as an investment adviser and would advise clients to invest in the Oil and Gas Securities. He advised clients to invest in the Oil and Gas Securities. Richards received advisory fees based on

assets under management in exchange for providing investment advice via his entity KNR Wealth Management. Richards did not disclose to his advisory clients the additional transaction-based compensation he received for selling the Oil and Gas securities, which breached his fiduciary duty to his advisory clients.

11. Richards violated the federal securities laws by: (i) actively participating in the offer and sale of the Oil and Gas Securities in securities offerings that were not registered with the Commission or exempt from registration; (ii) acting as a broker in the offer and sale of the Oil and Gas Securities while failing to be registered with the Commission as, or associate with, a registered broker-dealer; and (iii) failing to disclose to advisory clients his financial conflict of interest in connection with the sale of the Oil and Gas securities.

12. Richards participated in unregistered offerings at key points in the chain of distribution of the Oil and Gas Securities, including by actively soliciting purchases from investors in this District and elsewhere in the United States. The Oil and Gas Securities offerings were not registered with the Commission or exempt from registration.

13. Richards acted as an unregistered broker and engaged in the business of effecting transactions in securities for others. Defendant actively solicited his clients to purchase the Oil and Gas Securities and received transaction-based compensation in return.

14. Richards also failed to disclose financial conflicts of interest while acting as an investment adviser. He recommended the Oil and Gas Securities to advisory clients, while failing to disclose to those clients the financial compensation he received from the sale of the securities.

## VIOLATIONS AND RELIEF SOUGHT

15. As a result of conduct alleged in this Complaint, Defendant violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C.

§§ 77e(a) and (c)], Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)], and Section 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(2)].

16. The Commission seeks a judgment from this Court:

    (a) permanently restraining and enjoining Defendant from future violations of Sections 5 of the Securities Act [15 U.S.C. §§ 77e] and Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)];

    (b) permanently restraining and enjoining Defendant from violating, while acting as an investment adviser, Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)] by using the mails or any means or instrumentality of interstate commerce, directly or indirectly, to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any client or prospective client, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any client or prospective client, about the use of client funds or compensation to any person, including any associated conflicts of interest;

    (c) permanently restraining and enjoining Defendant from, directly or indirectly, including but not limited to through any entity he owns or controls, participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction

|   |   |
|---|---|
| 1 | shall not prevent Defendant Richards from purchasing or |
| 2 | selling securities for his own personal account; |
| 3 | (d) restraining and enjoining Defendant for five years from, |

(continuing):

      (d)  restraining and enjoining Defendant for five years from, directly or indirectly, acting as or being associated with any broker, dealer, or investment adviser; for purposes of this paragraph: (a) a person is associated with a broker or dealer if such person is a partner, officer, director, or branch manager of such broker or dealer (or occupies a similar status or performs similar functions), directly or indirectly controls, is controlled by, or is under common control with such broker or dealer, or is an employee of such broker or dealer; and (b) a person is associated with an investment adviser if such person is a partner, officer, or director of such investment adviser (or performs similar functions), or directly or indirectly controls or is controlled by such investment adviser, including any employee of such investment adviser;

      (e)  ordering Defendant to disgorge his ill-gotten gains, together with prejudgment interest thereon pursuant to Section 21(d)(3), (d)(5), (d)(7) of the Exchange Act [15 U.S.C. § 78u(d)(3), (5), and (7)]; and

      (f)  ordering Defendant to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

## **DEFENDANT**

17. **Kevin Neal Richards, age 53**, resides in Clearwater, Florida. Richards is a licensed insurance agent in California. During the Relevant Period, Richards lived and conducted business in Laguna Niguel, California. Richards is

not registered with the Commission as a securities broker, but was previously associated with various registered brokers prior to the Relevant Period. During the Relevant Period, Richards was an investment adviser representative, and was associated with KNR Wealth Management, Inc., an investment adviser registered in Florida, California, and Texas.

## OTHER RELEVANT PERSONS AND ENTITIES

18. **KNR Consulting Group, Inc.** was a California company located in Laguna Niguel, California. Richards was the sole owner and operator. The company is defunct.

19. **KNR Wealth Management, Inc.** was a California company located in Laguna Niguel, California. The company was registered in California, Florida and Texas as an investment adviser until the status was terminated in 2024. The company is defunct.

20. **Beacon Global Group, Inc.** is a Georgia company located in Marietta, Georgia. Beacon Global purports to offer consultancy services to businesses.

21. **Resolute Capital Partners LTD, LLC** is a Nevada company with offices in Texas, California and Minnesota. Resolute created numerous oil and gas debt and equity investment vehicles using oil and gas wells identified by Homebound and its affiliates.

22. **Homebound Resources, LLC** is a Texas company located in Irving, Texas. Homebound acted as a project sponsor for Resolute's offerings and was responsible for identifying and purchasing the oil and gas wells in which the Resolute investment vehicles owned working interests.

23. **Thomas Joseph Powell ("Powell")**, age 53, is a resident of Reno, Nevada. Powell was the owner of Resolute and other related entities, and served as the Senior Managing Partner of Resolute during the Relevant Period.

24. **Stefan Tiberiu Toth ("Toth")**, age 48, is a resident of Frisco, Texas. Toth is the founder, co-owner, Chairman and Chief Executive Officer of Homebound Financial Group, LP, and also operated and controlled its subsidiaries, including Homebound, during the Relevant Period.

25. A 2021 Commission Order found that Homebound, Resolute, Powell, and Toth violated registration and anti-fraud provisions of the federal securities laws. *See In the Matter of Resolute Capital Partners, Ltd, LLC, et al.*, AP File No. 3-20597 (Sept. 24, 2021) (the "Commission Order"). In particular, the Commission Order found that Homebound, Resolute, Powell, and Toth sold the Oil and Gas Securities in unregistered offerings that were not exempt from registration. It also found that their offering disclosures were inadequate and that they made materially misleading statements in marketing the Oil and Gas Securities. The misleading statements included insufficiently supported oil production projections, assertions about potential tax benefits that were unavailable to certain investors, and incomplete disclosures about potential uses of investor funds, including the amount of funds that would be used for payments to prior debt and equity investors.

26. Each of Homebound, Resolute, Powell, and Toth reached a settlement with the Commission, neither admitting nor denying the Commission's findings. The Commission Order found that Homebound, Resolute, Powell, and Toth violated Sections 5(a) and (c) and 17(a)(2) and (3) of the Securities Act, and found that Powell and Toth additionally violated Section 15(a) of the Exchange Act.

## FACTS

### I. The Unregistered Offerings of the Oil and Gas Securities

27. The Oil and Gas Securities offered and sold by Resolute and Homebound included both equity securities and debt securities. The securities were offered and sold throughout the Relevant Period.

28. The equity securities were membership interests in pooled investment vehicles that purchased a percentage interest in a set of oil and gas wells identified and purchased by Homebound including, for example, an offering titled Strategic Energy Assets VIII. The offering materials for these equity securities stated that investors could expect monetary distributions from revenue earned by the wells' oil or gas production and revenue from any subsequent sale of the wells.

29. The debt securities were promissory notes issued by subsidiaries of Homebound including, for example, offerings titled Choice Energy Holdings III and PRMH Lenders Fund IV The offering materials for these debt securities stated that the proceeds would be used by a subsidiary of Homebound to acquire oil and gas leases, among other things. The offering materials promised fixed interest payments ranging between 8% to 12% and the return of capital upon expiration of the notes.

30. The Oil and Gas Securities were "Securities" within the meaning of Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act. The equity securities involved investors paying money to purchase membership interests, a common enterprise, and a reasonable expectation of profits based on the efforts of third parties who identified, acquired and drilled the wells. The promissory notes were "notes" as included in the definition of "security" set forth in Section 2(a)(1) of the Securities Act.

31. The offerings of Oil and Gas Securities were required to be registered with the Commission under Sections 5(a) and (c) of the Securities Act or otherwise qualify for an exemption from registration. During the Relevant Period, no registration statement was filed or in effect for any offering of Oil and Gas Securities and no exemption from registration applied to these securities offerings.

## II. Richards Contracted with Beacon Global to be a "Referral Agent" for Resolute

32. On October 12, 2018, Beacon Global entered into a "Master Services Agreement" with Resolute. The agreement obligated Beacon Global to provide "support and compliance services" to Resolute. This included Beacon Global contracting with "Referral Agents" who would "refer" investors to Resolute for potential investment in the Oil and Gas Securities. Beacon Global was also required to provide "payment services" to Resolute by receiving a monthly ACH transfer from Resolute and using the funds to compensate the "Referral Agents." The agreement stated that Beacon Global was to receive compensation, on a monthly basis, of the greater of (a) $20,000 or (b) 0.4% of monies brought in by the "Referral Agents." The agreement also provided for reimbursement of Beacon Global's expenses.

33. On October 24, 2018, Richards entered into an agreement with Beacon Global to act as a "Referral Agent" (or "Referral Contractor," as the agreement states) for Resolute. The "Referral Contractor Agreement" provided Beacon Global would compensate Richards for "referring" investors to Resolute for investment in the Oil and Gas Securities. It specified that Richards would be paid both a monthly fee and additional transaction-based compensation for his efforts. On October 21, 2020, Richards entered into a new "Referral Contractor Agreement," which updated the terms of Richards's compensation, but similarly provided that Beacon Global would compensate Richards for his "referral" of investors to Resolute.

34. The agreements prohibited Richards, as a "Referral Contractor," from engaging in certain activities. Among other things, Richards was not permitted to:
    a. "Provide to prospective investors or lenders ('Prospects') any offering documents related to investment opportunities";
    b. "Sell any securities or engage in any sales efforts";

  c. "'Pre-sell' securities offered by [Resolute] in order to gauge a Prospect's interest in an investment";

  d. "Solicit any Prospect for investment";

  e. "Make any recommendation with respect to a potential investment";

  f. "Give any advice or express any opinion with respect to a potential investment, or its advantages or disadvantages";

  g. "Conduct any suitability analysis, conduct any due diligence, provide any valuation services, or provide any analysis of a potential investment";

  h. "Do any advertising or mass marketing";

  i. "Modify existing or create new educational materials"; and

  j. "Compensate another person, entity, or other third party based on a referral's investment into any product."

As described below, Richards engaged in sales activities despite the foregoing prohibitions in the agreements.

### III. Richards's Sales Activity Relating to the Oil and Gas Securities

35. Although the "Referral Contractor Agreements" purported to limit his services to finding and referring potential investors to Resolute, Defendant in fact participated in the offer and sale of the Oil and Gas Securities to investors.

36. Defendant sought prospective investors through general solicitation in a variety of ways. Richards promoted oil and gas investing at networking events, seminars, local news interviews, and on a radio show; used advertising spots in Forbes and other media, and email solicitations to reach a large audience and solicit additional investors. Richards told prospective investors that if they were interested in oil and gas investing, they should contact him directly for additional information.

37. When prospective investors reached out to Richards, they were invited to meet with him. There, prospective investors were given questionnaires to assess their wealth and risk tolerance.

38. Richards described the Oil and Gas Securities in detail to his clients. He provided investors with marketing and offering documents for the securities, which he then reviewed with them, and discussed with clients the features and risks of the investments.

39. Richards filled out investment documents on behalf of investorsand would have them sign.

40. Richards made presentations to prospective investors using charts with projections, and told investors that the Oil and Gas Securities were low risk, high return investments. Richards told investors that there were many layers of professionals overseeing the investments which ensured that the investments were sound. Richards advised investors on the purported tax benefits of investing in the Oil and Gas Securities.

41. Richards told investors that Thomas Powell was the largest investor in the Oil and Gas Securities, reiterating a false statement made by Powell at investment seminars.

42. As to certain investors, Richards also was an investment adviser through his defunct entity, KNR Wealth Management, and advised investors to invest in the Oil and Gas Securities. Richards, through KNR Wealth Management, received fees from these advisory clients for providing investment advice and managing the clients' investments. Richards did not disclose to these clients who purchased the Oil and Gas Securities the financial compensation he received from Resolute/Beacon, which was a breach of fiduciary duty to his advisory clients. The failure to disclose this compensation was material. Following his recommendation, certain of Richards's clients purchased the Oil and Gas Securities.

43. Richards affirmatively made misrepresentations about his compensation. For example, in or around March 2020, an advisory client, Investor A, repeatedly questioned Richards regarding how he was compensated for selling the Oil and Gas Securities. Richards told Investor A that he (Richards) received a discount when buying Oil and Gas Securities for himself. Richards did not tell Investor A that he received transaction-based compensation for his clients' investments in the Oil and Gas Securities. Richards also incorrectly told this same investor that the Oil and Gas securities was insured and that there was no risk. In this and the example described directly below, Richards relayed information to investors that he received from Resolute which turned out to be false or misleading. Investor A ultimately lost $250,000 from his investments in Resolute.

44. In or around April 2020, Richards incorrectly told other advisory clients, Investors B and C, a married couple, that their principal was "guaranteed" because it was secured by Resolute's real estate assets. In fact, Resolute's liabilities vastly exceeded its assets.

45. Investor D, another advisory client of Richards, received investment advice and, based on Richards's recommendation, invested $250,000 in the Oil and Gas Securities in February 2020. Again, Richards did not disclose his transaction-based compensation to Investor D. Investor D received three months of interest payments before payments stopped, and lost the vast majority of her principal.

46. Through Richards, investors purchased investments in multiple of the Oil and Gas Securities offerings, including offerings titled Strategic Energy Assets VIII, Choice Energy Holdings III, and PRMH Lenders Fund IV.

47. Richards's contribution to the distribution of the Oil and Gas Securities was not *de minimis*. To the contrary, he generated approximately $12 million of sales for Resolute during the Relevant Period.

## IV. Richards's Compensation

48. During the Relevant Period, Richards sold approximately $12 million of the Oil and Gas Securities to retail investors, and received from Resolute, through Beacon Global, $618,794 in transaction-based compensation. This compensation was purportedly calculated based on the two "Referral Contractor Agreements" between Richards and Beacon Global.

49. The first agreement, the October 2018 "Referral Contractor Agreement" between Richards and Beacon Global, provided that Richards would receive a monthly contractor fee of $29,151.57, as well as a referral fee of $2,309 for every investor Richards placed with Resolute. The agreement also provided that Richards's compensation could increase pursuant to bi-weekly "quality assessments" of Richards's "referrals" and certain "referral fee multipliers." The "quality assessments" allowed Beacon Global and Resolute to adjust Richards's compensation based on how much investment money he was bringing into Resolute. The "referral fee multipliers" provided for additional compensation to Richards for longer term debt securities that he sold. For example, Richards was compensated more for selling a two-year note than a one-year note.

50. The second agreement, the July 2020 "Referral Contractor Agreement," provided for tier-based "referral" fees, with "Directors Club" being the highest paid tier. The agreement also had "quality assessment" provisions and provided that "[a]dditional Marketing Fees may be provided at the sole discretion of the parties." Under both agreements, Resolute, through Beacon Global, paid to Richards transaction-based compensation based on the dollar amount of investments and type of securities Richards sold. The tier designations provided for higher compensation to Richards based on the aggregate amount of money Richard's clients invested in the Oil and Gas Securities.

51. Richards was paid for performance and monies invested—transaction-based compensation—through the use of salesperson "tiers," "referral

fee multipliers" and "quality assessments." Richards received $368,293.69 in transaction-based compensation in 2020, and $250,500 in 2021.

## CLAIMS FOR RELIEF

### Count I

**(Violations of Sections 5(a) and 5(c) of the Securities Act)**

52. The Commission re-alleges and incorporates by reference the allegations in paragraphs 1 through 52, inclusive, as if they were fully set forth herein.

53. As detailed above, Richards, by engaging in the securities offerings alleged in this Complaint directly or indirectly:

(a) made use of the means or instruments of transportation or communications in interstate commerce or of the mails to sell securities through the use or medium of any prospectus or otherwise, without a registration statement in effect as to such securities;

(b) carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, securities for the purpose of sale or for delivery after sale, without a registration statement in effect as to such securities; and

(c) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

54. There were no applicable exemptions from registration for the offerings Richards engaged in as described herein.

55. By reason of the foregoing, Defendant violated, and, unless enjoined, is reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) and 77e(c).

## Count II

**(Violations of Section 15(a) of the Exchange Act)**

56. The Commission re-alleges and incorporates by reference the allegations in paragraphs 1 through 52 inclusive, as if they were fully set forth herein.

57. As detailed above, Defendant, directly or indirectly, by the use of the mails or the means or instrumentalities of interstate commerce, while acting as a broker or dealer, effected transactions in the purchase or sale of securities, while Richards was not registered with the Commission as a broker or dealer in accordance with Section 15(b) of the Exchange Act [15 U.S.C. § 78o(b)].

58. By engaging in the conduct described above, Defendant violated, and unless restrained and enjoined, is reasonably likely to continue to violate, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

## Count III

**(Violations of Section 206(2) of the Advisers Act)**

59. The Commission re-alleges and incorporates by reference the allegations in paragraphs 1 through 52 inclusive, as if they were fully set forth herein.

60. By engaging in the acts and conduct alleged in this Complaint, Defendant acted as an investment adviser to his clients within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11), because, for compensation, he engaged in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities.

61. As detailed above, defendant, directly or indirectly, by use of the mails or means or instrumentalities of interstate commerce, while acting as investment advisers, engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon any client or prospective client, with at least negligence.

62. As an investment adviser, Defendant owed his clients a fiduciary duty of utmost good faith, undivided loyalty, and care to make full disclosure to them of all material facts, as well as the duty to act in their best interests, and not to act in his own interests to the detriment of his clients.

63. Defendant breached his fiduciary duty to clients and engaged in fraudulent conduct by not disclosing conflicts of interest to his clients.

64. By reason of the foregoing, Defendant violated, and unless enjoined is reasonably likely to continue to violate, Section 206(2) of the Advisers Act, 15 U.S.C. § 80b-6(2).

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a judgment:

(A) Permanently restraining and enjoining Defendant from, directly or indirectly, violating Section 5 of the Securities Act [15 U.S.C. § 77e]; and Section 15(a) of the Exchange Act [15 U.S.C. § 78(o)];

(B) Permanently restraining and enjoining Defendant from violating, while acting as an investment adviser, Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)] by using the mails or any means or instrumentality of interstate commerce, directly or indirectly, to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any client or prospective client, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any

false or misleading statement in any communication with any client or prospective client, about the use of client funds or compensation to any person, including any associated conflicts of interest;

    (C)    Permanently restraining and enjoining Defendant from, directly or indirectly, including but not limited to through any entity he owns or controls:

        participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent him from purchasing or selling securities for his own personal account;

    (D)    Restraining and enjoining Defendant for five years from, directly or indirectly, acting as or being associated with any broker, dealer, or investment adviser; for purposes of this paragraph: (a) a person is associated with a broker or dealer if such person is a partner, officer, director, or branch manager of such broker or dealer (or occupies a similar status or performs similar functions), directly or indirectly controls, is controlled by, or is under common control with such broker or dealer, or is an employee of such broker or dealer; and (b) a person is associated with an investment adviser if such person is a partner, officer, or director of such investment adviser (or performs similar functions), or directly or indirectly controls or is controlled by such investment adviser, including any employee of such investment adviser;

    (E)    Ordering Defendant to disgorge all funds received from his illegal conduct, together with prejudgment interest thereon, pursuant to Section 21(d)(3), (d)(5), (d)(7) of the Exchange Act [15 U.S.C. § 78u(d)(3), (5), and (7)];

    (F)    Ordering Defendant to pay a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; and

(G) Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws and for the protection of investors.

Date: September 11, 2025

                                Respectfully submitted,
                                */s/ Ruth C. Pinkel*
                                Local Counsel
                                Securities and Exchange Commission
                                444 S. Flower Street, Suite 900
                                Los Angeles, CA 90071
                                Telephone: (323) 965-3322
                                Email: pinkelr@sec.gov

                                Brian T. Fitzsimons (*pro hac vice pending*)
                                Securities and Exchange Commission
                                100 F Street NE
                                Washington, D.C. 20549
                                Telephone: (202) 551-5905
                                Email: fitzsimonsb@sec.gov

                                Attorneys for Plaintiff

<u>Of Counsel</u>
Brian O. Quinn
David T. Frisof